Good morning. We have three appeals to hear this morning. Everyone should be aware that we're familiar with your cases, and we've read the briefs, the authority cited in the briefs, and at least portions of the record, and you should feel free in the limited time that is available to you to get straight to the heart of your argument. Make the points that you feel are most compelling this morning. We may have some questions. In the event that we do have questions, if your time has expired and the red light, which we ask that you not treat as aspirational, shines, feel free to finish answering the question from the court, but do respect our time, and you'll save your time. For rebuttal, if you have time for rebuttal. So, let's hear the first appeal, Lee v. United States. Mr. Stewart, will you come speak with us, please? Good morning. May it please the Court, I'm Jesse Stewart, appearing on behalf of Lisa R. Lee, the petitioner-appellant. Ms. Lee's family is also here in the courtroom this morning. I'd like to reserve three minutes of my time for rebuttal. This morning's inquiry is discreet. It's limited to the issues in the COA, which specify the question of whether the district court erred when it summarily denied Lee's ineffective assistance of counsel claims without taking any evidence on the sole basis that Lee failed to allege prejudice as to those claims. This is a mixed question of law and fact, which means that the review is de novo, and the petition is written in Lee's own hand. It's in her own words, and therefore the Court's inquiry is informed by the mandate to construe all ambiguities in her favor. But here, I don't really think that there is any ambiguity, because Lee expressly alleged prejudice within the context of her claims, which under Strickland simply requires a plausible basis to infer that the result of her prosecution would have been different but for counsel's incompetence. Lee raised many issues in her pleadings. I think a fair reading, however, of her pleadings indicates that each of these issues relates back to counsel's original failure to challenge the constitutional basis of the indictment, and in particular, his failure to seek a Castigar hearing to determine if information obtained from Lee in a proffer session was thereafter used against her to obtain her indictment, her conviction, and her sentence. What is the prejudice from his having failed to ask for a Castigar hearing? I'm glad you asked that, Your Honor, because I want to go right there. I think that goes directly to the investigative stage. Now, in order to show prejudice at this stage, which would require dismissal of the indictment, we would need to show a reasonable probability that but for his failure to seek a motion to dismiss, the indictment would have been dismissed. Lee's express allegations establish each element of that Castigar claim. She alleges that a proffer session occurred. She alleges that it occurred before the indictment came down. She alleges that the government offered her immunity. She alleges that the government thereafter broke its promise. She alleges that, these are her words, she was indicted for the conduct the government promised not to hold against Lee, which was all the conduct that was alleged here. She alleges that counsel was ineffective, again, in her own words, because he failed to ask for a Castigar hearing to see if protected information was presented to the grand jury. She alleges that, in her own words, counsel did not perform for the level of what is Lee's constitutional right of an attorney when facing a felony in federal court. She quotes Strickland's prejudice prong, saying that if there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Prejudice is established. And then ultimately, she alleges that but for counsel's failure to protect her rights, again, her words, she would not, in her own words, be imprisoned for a second time for the same conduct without any new conduct occurring. So let me ask you this then. It seems to me that if that's enough to survive the prejudice prong, that any time that somebody proffers that, and their counsel does not ask for a Castigar hearing, and then they plead guilty, that on the 2255, they would always be entitled to have a Castigar hearing at the 2255 effectively. Is there some reason that's not the case? I think that's not the case. I think that might be the case under a different set of facts. Why is it not the case? Because I think in this case, we have cut and dry indication of counsel's incompetence. I think your question really goes to the incompetence prong. And that is the email that he sent on June 20, 2012, where he said that he didn't ask for a Castigar hearing because he didn't know that one could be obtained in order to get at the information that was provided to the grand jury. And even further, he wouldn't even go back and ask Ms. Lee's former attorney for that proffer agreement. Now, under Alabama v. Hinton, a counsel's failure to understand the law and a counsel's failure to investigate is per se incompetence under Strickland. This was not a strategic decision. And in a different case, if counsel were to show or the record were to indicate that there were a strategic decision not to seek a Castigar hearing, then I think your question is correct. There's almost never going to be a record that shows that there's a strategic decision not to seek a Castigar hearing in the circumstances I've described. That is, where there's a proffer that occurs and then a guilty plea occurs. There's just almost never going to be that. And let me tell you what my concern is. It seems to me like she has to show that there's something that they had from her that they didn't have in the evidence that's otherwise in the record. And here, if we look at the transcript from the detention hearing, if we look at the transcript from the supervised release hearing, first of all, in the supervised release hearing, she admits that counts against her, you know, the behavior. Second of all, there's a bunch of evidence, including a notebook that has, and I quote, evidence of mail fraud, evidence of wire fraud, evidence of bank fraud set forth. Kelly Moonshower also testified during the supervised release hearing. And so it seems to me, and, you know, this would be a different case, I think, if your client also had derivative use immunity. But she doesn't have derivative use immunity. And so I don't see how – I just don't see how she could show prejudice here because it looks like there's all independent sources of all of this information in the record. But I may be missing something, so I want to give you a chance to explain that. No, I'd be happy to. And I think your question is well taken because certainly if the government was able to show an independent source for their information, that would be a basis to deny or castigate our claim. We can't know on this record because the government was never asked because counsel was incompetent and failed to ask for it. But why can't we look at the record? If you look at the proffer agreement itself, appended to that proffer agreement is that 18-page spreadsheet. Now, that was prepared in advance of the proffer session. So we know that this – we're presuming at this point that this was prepared by the government. We don't know that because it was never tested. Well, I mean, didn't the probation officer testify during the supervised release hearing that she had prepared it? She testified that she had prepared a spreadsheet. Whether this is in fact the spreadsheet I think is a question of fact that we need to know. In that proffer agreement spreadsheet, we see handwritten notes on the top. And in particular, I'm looking at page 4 of 22 under the court's numbering where it says Moonshower bought from the corporation. Defendant had permission from her clients. Defendant says that she got from Kelly Moonshower. These are handwritten notes that were taken presumably during that proffer session indicating that new information was gained there. That new information then does appear on the face of the indictment. We see the Kelly Moonshower account. I agree. The new information – this information is in the indictment. The problem that I see is that there's also in the record independent evidence that substantiates this. And since she doesn't have derivative use immunity, it doesn't matter that they learned about it from her if they were also able independently to corroborate it. And so that's where I'm having the issue. I don't know if you can maybe address why the other evidence in the record doesn't get you there. I think the issue right now, Your Honor, is that we just don't know. We don't know whether the government went in front of the grand jury and presented those independent sources, which it could have done, of course, or whether it sent the same agent who met with her in this meeting, gained new information, and presented it to the grand jury in a violation of her rights under CASAGAR. The government's obligation – Counsel, it seemed to me that the inquiry for us is a little narrower. And that is – so as I understand it, the district court said that your client had failed to allege prejudice because all she complained about was her sentence. And if, looking at her filing, we discern that, in fact, she alleged other forms of prejudice, that really the simple disposition is to just send it back and have the district court evaluate this. And my concern was whether – it appeared to me that your client had alleged that her indictment should have been dismissed, that she pleaded guilty on the bad advice of her lawyer and would not have otherwise pleaded guilty had she been better advised, and that she had better arguments to present on appeal. And from that, we can discern that her appeal would have been successful had those arguments been made, and that those are forms of prejudice that had not been considered by the district court, and that it's best fleshed out in the first instance by the district court because, really, the district court hasn't considered any of those, right? Correct. Correct. I think that is absolutely correct. And it is commonplace for this court as well as the Supreme Court, when presented with questions like this, to send it back down for an evidentiary hearing. And even though the government's burden is heavy – I don't even think necessarily – to me, at least, the inquiry is so narrow that it's not for us to say whether it merits an evidentiary hearing or not. Fairly possible. Only that this filing alleged other forms of prejudice that the district court just did not address and should be addressed in the first instance by the district court. Am I right about that? I agree with you, Your Honor. No, I agree with you about that. And if we look at what the COA identifies as the issue, is that it? Correct. No, as I said at the beginning, our review today is very discreet, and it's limited to that issue in the COA. And that issue is necessarily informed by the liberal pleading standard. But, again, I think that there are the express allegations that you have identified that the court failed to take into consideration. And admittedly, this – You know, you said at the beginning of your argument that you didn't think there was really any ambiguity. In fairness, I think that this filing is ambiguous. It's pretty thorough, actually. Well, I would suggest, Your Honor, that – Thorough, maybe. But, I mean, it's hard. But we do have to give it a liberal construction. Your Honor, if I, as a young associate, were to take this pleading to my managing partner and say to him, this is what I propose to file, I think he would say, the substance is all there, but you need to reorganize. And there is some reorganization that needs to be done. And I think that, given another chance, we could easily reorganize it in such a way that this would present very clearly the claim that Ms. Lee has alleged in this case. Okay. You've saved three minutes for rebuttal. Thank you. Let's hear from Ms. McBath. May it please the Court, my name is Elizabeth McBath, appearing on behalf of the United States. The District Court did not abuse its discretion in denying the defendant's 2255 motion without a hearing because that motion contained unsupported generalizations, it was affirmatively contradicted by the record, and it also contained factual assertions that, even if we take as true, would not have entitled the defendant to relief below. The District Court was wrong, was it not, to suggest that the only prejudice alleged was the sentencing prejudice. Am I right about that? I'm not sure. I think that we have to look at this in context, Your Honor. As y'all noted, we saw a very polished oral argument here, we saw a very polished appellate brief filed with this Court. To be fair to the District Court, I think it's important, obviously, to go back to those two pleadings. In her petition, she only alleged two allegations of prejudice. One was that she was sentenced three times longer than she should have been. And the other was that she was emotionally traumatized. In her memo, the bulk of her memo addresses this time she says she was sentenced four times longer than she should have been. And she also makes the second part of her… But she alleged, did she not, that her attorney should have moved to dismiss the indictment, and she sought relief in that she asked the District Court to dismiss the indictment. Should we not discern from that that the prejudice she alleged in her attorney's failure to challenge the indictment is that had the attorney done so, it would have led to the dismissal of the indictment? And if that is what we're to discern, wouldn't that be a different form of prejudice than what the District Court addressed? I think under a liberal standard that that could actually… Yes, Your Honor, I think that that could be the case. But the defendant would still have to show, in addition to showing, one, a reasonable probability that she would have pled guilty but for ineffective assistance, that she would not have pled guilty, and a reasonable probability that a motion to dismiss would have been granted. The District Court recognized one… Well, let me back up. I take issue with the fact that the District Court denied this solely on the basis that defendant didn't allege prejudice. So if we look at the order, the District Court says that on page 20 that the defendant made different allegations, and the District Court references Castigar in the Speedy Trial Act and says that the defendant offers no explanation or factual support whatsoever. So the way I interpret that is the District Court is saying these are unsupported generalizations. And given that, the case law, black-letter law, says that the defendant is not entitled to a hearing, given the fact that those were simply unsupported generalizations. The District Court also found that counsel's strategy was more than adequate, and that's on page 21. So as we know, under Strickland, if a defendant does not meet their burden under either prong, in this case the first prong, then the second prong of prejudice need not even be addressed. And this was not a triable case. There was not a viable defense here. And the District Court recognized that defense counsel did more than adequate job in recognizing that the defendant had already admitted to all of these allegations, that the evidence was absolutely overwhelming against her. The defense counsel did exactly what a good defense counsel would do. Defense counsel argued to try to get rid of the documentary evidence. So this was a motion to suppress case. When defendant lost on the motion to suppress, then defense counsel's strategy turned to, I need to get my client a three-point acceptance of responsibility. So the District Court recognized the deficiency prong, found the representation to be more than adequate on that, looking at prejudice, found unsupported generalizations, and based on that, under black-letter law, the District Court was well within its discretion in denying the 2255 without a hearing. Turning to . . . Just you pointed to the sentence on page 20 where Judge O'Kelley used the word castigar, which I think he only used twice in the whole order. It says she gives no reason why she should have been entitled to a castigar hearing. But I'm looking at the 2255 pleading, and she kind of sets out exactly what information she gave to the government. She explained how her photo came to be in the hands of the bank fraudster, even identified the man from the bank surveillance photograph. So, I mean, she does delineate what evidence she gave the government that she says they wouldn't have otherwise had, and the order does not address that at all. That's true, Your Honor. And I recognize that in fairness to the District Court. The defendant did not give a date that any proffer took place, didn't explain what prosecution the proffer took place. So it's understandable that the District Court would not understand what exactly she was referring to because there was no record of a proffer. It's not going to be in the docket. And she also had another prosecution. So, understandably, the District Court probably was not understanding exactly what she was referring to. But recognizing what you just said, Judge Martin, it is true that there are parts of the memo where she points out the things that she proffered. And I'd like to address those because I think it's really important to look at what she did say she said. And that is, she says that she told the government that she worked for the people who were doing these criminal acts, but she did not know that what they were doing was wrong. And when she learned that they were engaged in criminal activity, that she disassociated herself from them completely. She also says that it's true that she was in the car when the brink fraudster went into Flagstar Bank and conducted counts two and three. But she says that, one, she didn't know that he was going to do that. And, two, when she found out, she refused to participate, that he threatened her, and that she remained in the car. So these are not proffer statements that are protected by Castigar. These are not self-incriminating testimony. This is self-absorbing. But none of that was addressed by Judge O'Cally in his order. It was not. Judge O'Cally, that's correct. Judge O'Cally stopped at the deficiency prong and the unsupported generalization. But this court can affirm. I'm looking back at this, and the district court, beginning on page 9 and addressing ineffective assistance, then on page 10 goes directly to prejudice and talks about the sentencing argument. And it's page after page about guideline issues, right? Upward adjustment for role in the offense, inaccuracies in the pre-sentence report, etc., etc. All of these are guideline issues. And then it all concludes at the top of page 16. Thus, petitioner cannot show her claim of prejudice for being sentenced to three or four times as much time as she should have been. And then under the title, Remaining Items, the district court addresses arguments about the petitioner saying that there was some kind of conspiracy between the government and the court against her. It's really a different kind of argument that the district court is then addressing as opposed to an effective assistance claim. And my concern is that, I mean, it may be a lot of merit to all of the things that you're saying, but none of this has been fleshed out or considered in the first instance by the district court. We'd have to go and do the district court's work for it in determining these issues. I understand, Your Honor. My response to that would be, for judicial efficiency, this court can affirm on any basis in the record. And that basis in the record I can point to you now. And the first is that these allegations that she makes and the pleadings that were in front of the district court are self-serving statements. So it is a nonsensical argument, which is a reason to dismiss the 2255 without a hearing, a patently frivolous claim. It is a nonsensical argument to say that the government used these statements that she says that she made against her in front of the grand jury to return an indictment against her. It makes no sense. It is patently frivolous. And even if we accept as true that the defendant said what she said to us during this proffer, and even if we accept as true that the government actually presented this to the grand jury. Not what was identified, though, in the COA, is it? It's not, but I think it's intertwined, Judge. I think that we have to end up defending. I'm not saying we couldn't do it, but often the government is saying to us, you know, that's not within the scope of the COA, Your Honor. And, you know, I'm looking at the COA, and I don't see where it says that. And you mentioned judicial efficiency, and I'm thinking of my efficient use of time. And it seems to me that you're asking me to perform a lot of work that I could send back to somebody else. Well, your point about the COA, it's my understanding of the law that the COA limits what the defendant can argue. And, of course, the government, we are in a position now of defending what the district court did below. And an ample reason that we can offer in defending that order is you can affirm on any basis in the record. And here, Judge, I've done the work for you and can tell you those areas in the record that support that even if we take as true, and this is the standard for denying a hearing, even if we take as true that the defendant said what she said to the government, and even if we assume that the government used those self-serving statements to return an indictment against her, that it is not reasonably probable that the grand jury... that it did not substantially influence the grand jury's decision to indict. Because of the overwhelming evidence we had against this defendant in presenting it to the grand jury, and the record is replete with this evidence, and the district court refers to it, the PSR, there are many paragraphs that explain what we knew before the proffer. The motion to suppress transcript, the two probation officers testify, and they tell us everything they did, their entire investigation, leading up to her arrest for revocation of supervised release. And in the revocation of supervised release, we have many exhibits that have been tendered into evidence that show the defendant has no viable defense to this. There are hundreds of documents that they found, the probation office found, when they searched the defendant's house, office, car, and person. Hundreds and hundreds and hundreds of documents showing that she personally had gone on to the Georgia Secretary of State website, had hijacked these corporations, that she personally had gone into Dun & Bradstreet and affected the credit rating. She personally had the ABD Corporation, she had all the credit cards, she had the bank statements. The probation officer found the victim before we ever arrested her for revocation of supervised release, the victim for ABD, and for counts two and three, KM. And in addition to that, the defendant walked into court and admitted to doing all of these things. So it is absolutely nonsensical, patently frivolous, as we sit here today, to assume that all of the information we had before we went to the grand jury, that somehow the grand jury was substantially influenced to return an indictment against her based on her self-serving statements. It makes no sense. And that is why I argue judicial efficiency, Your Honor, really, this is not the case to do that when the record is very clear that the district court was absolutely correct in denying this 2255 without a hearing. Ms. McBeth, can I turn you to another one of Ms. Lee's claims? In your brief, as I recall, I've read a lot of briefs this week, or for this week, that she fails to state the Hill v. Lockhart standard about the plea, you know, I wouldn't have pled, but for the deficient performance of my lawyer. But I just wanted to give you a chance to respond because I think she did. I mean, she says, if he had explained to me that I could plead guilty to some counts but not to others, I would not have pled to the bank fraud count. So I felt like she did meet the standard on that one. That's fair, Your Honor. We didn't want to waive that argument, but I completely understand that. But in addition to her having to have said those magic words in her pleading below, she also had to show a reasonable probability that she, in fact, would have proceeded to trial. And there are two ways that she can't show that, and that's the Rule 11 colloquy and the overwhelming evidence. And on the Rule 11 colloquy, so even if we take her assertions as true, since we're looking at whether or not it was an abuse to deny hearing, take her assertions as true that the defense counsel was ineffective in failing to explain the elements to her and getting the law wrong and not explaining her sentencing exposure. If you look at the Rule 11 colloquy, the district court did those things. And so that cures any alleged prejudice. And because of that, the district court properly denied the 2255 without a hearing. Thank you. Thank you. Mr. Stewart. Thank you. I just want to raise a few things in rebuttal. First of all, to the court's point, the COA is limited,  And we quite clearly have showed, based on her express allegations of prejudice. We probably could, though, affirm for any reasons supported by the record, right? I think that's correct in any case. But in here, in this case, in this context, you have two options. You either have prejudice allegations or you have performance allegations. You can't affirm on performance because you have Hinton v. Alabama, which says that an attorney's ignorance of the point of law. But the district court didn't decide it on performance, right? Correct. It didn't even go in to the performance element. So you can't go to performance, which leaves prejudice. And we've shown today how that prejudice element is established. You can't get to the merits of the claims, which I think is what the government is tacitly inviting you to do here. Because in order to decide the merits, we have to know what went on in that grand jury. It's not enough that an agent who sat down with Ms. Lee one day went down and got an indictment the next day and for the government to come in and say, look, all of this was available to the agents beforehand. Look at these reams of evidence. The Schmigel cases, which we have cited in our briefs, make clear that the government's burden is to show line by line in that transcript what occurred there. Now, we're not to that point yet. And so we can't affirm on a basis that a Cassegard hearing didn't. What about your friend's argument that insofar as we can make determinations based on this record, we should do so in the interest of efficiency? Well, I think I agree with your position, Your Honour, that the most efficient thing is to give it back to the district court and allow the district court the opportunity to address this in the first instance and get to the bottom of this and the government, if they so choose, to answer it accordingly. The government has not answered this before this point. It did not answer it in the district court. The last thing I think I want to bring up is just the fact that at the plea stage, Judge Martin, you were asking about that, the Rule 11 colloquy did not cure all the errors. Perhaps the Rule 11 colloquy went to whether the elements of the offense were properly informed to Ms. Lee. They did not address her allegation that by pleading guilty to an offense while she was on supervised release, her sentence could be enhanced. There's nothing in the Rule 11 colloquy that addresses that in particular. So there's no cure for that point. My time is running low, so I just want to be sure to say that we request that the district court's judgment be reversed and that this be remanded for further consideration. And in particular, we also request, as we stated in our opening brief, that this court exercise its discretion to expand the COA to include whether the castigar proffer was used at the sentencing stage. I think there's a basis to believe that it might have been. Thank you very much. Thank you. We have your case. Hood versus the Department. Oh, I should have mentioned. I note that you were court appointed, and Mr. Stewart, we really appreciate you accepting the appointment. You discharged your duty well and honorably. Thank you very much. And, of course, we always appreciate the public service of the United States Attorney's Office as well.